Case number 20-3432 OverDrive Inc v. Open eBook Forum. Oral argument not to exceed 15 minutes per side. Mr. Fiorella, you may proceed for the appellant. Thank you. Good morning. Good morning. May it please the court, my name is Andrew Fiorella and I represent the plaintiff appellant OverDrive Inc in this matter. I've reserved five minutes for rebuttal. This is an appeal seeking reversal of the district court's order in judgment denying OverDrive's partial motion for summary judgment on very narrow grounds and granting IDPF's motion for summary judgment. Both decisions at the district court were based on prudential ripeness. This is after the district court specifically found Article 3 standing for OverDrive in its claims and we believe ignoring this court's holding in Kaiser v. Reitz. Equally important, if this decision is left undisturbed, the district court's order will result in three things. It will confuse the court's ripeness jurisprudence, which doesn't view ripeness as a separate qualifying factor for justiciability. It will narrow copyright protection afforded to authors in collective works and will leave the status of IDPF's very perhaps permanently. In addition to the errors of the district court, we're here today because of IDPF's dogged determination to dismantle itself and force through a complete transfer of EPUB to W3C. EPUB is a very important digital book specification. It's the most widely used independent e-publishing format in the world. Counsel, maybe we could talk a little bit about ripeness. It's kind of hard to understand exactly what's going on in this case. The agreements from what initially was going to go through in 2017 were getting close to four years later. There's been a new agreement. I don't want to push you get outside the record. However things looked in 2017, they sure look a lot more in flux in 2021. That, of course, does implicate ripeness. I'm happy to hear you talk about it. Ignore the prudential side of it. Let's just focus on the core Article 3 way of thinking about it. That's fine by me, but I'm still struggling with why it's ripe given all the moving parts. Certainly, Judge Sutton, I'll be glad to go through that. We believe that at the moment when the members of IDPF voted to approve the transaction, the case became ripe. The reason why we say that is the asset transfer agreement, which became effective on January 30th of 2017, obligated IDPF both to transfer overdrives, copyrights, and all the IP, frankly, of IDPF to W3C, but it also set us a date certain for that, which was October 30th of 2017. At some point in time, they must have realized that we were right about the copyright transfer. I think they knew about it. We think they've known about it for 20 years, literally 20 years, but specifically between the time when the approval occurred, that was the sufficient preparatory step. In other words, I think what the district court aired was requiring actual current infringement. Nobody doubts that when IDPF dissolves, there will be actual infringement. The question is, at what point before that? Can I ask you why that's so clear? I thought one of your copyright arguments was that there can be an interest in collective works, and then the individuals say overdrive could still have copyright protection. In other words, under that theory of copyright law, if you're correct, so be it. Wait till the darn transaction goes forward. Wait till MIT or W3C, whatever you want to call it, uses EPUB in a way that infringes this separate copyright, and voila, you can protect your interest. I don't understand why you wouldn't want that concrete setting for the dispute. The only thing that makes this even slightly questionable is the improper later license, the specification license agreement. That was not contemplated by the agreement that the members approved and was specifically designed to undo our litigation. I think that's where we fall into the Davis versus Blige world of you can't undo an already ripe claim or an already infringing claim or however way you want to couch the holding in that case by giving a later license, particularly one when there had been- I guess maybe just think about it a slightly different way. How are you injured? No one's going to claim you didn't protect your interest. You violated some statute of limitations. You've obviously protected your interest in that sense. What's the downside of waiting till MIT actually uses EPUB in a way that infringes your rights? I'm sorry to interrupt you, but right now the contributions that all the authors made to EPUB, when it was actually before there was IDPF, which is when this specification was- Stay focused. Stay focused on my point. You're not staying focused on my point. Go ahead. No, I understand. We do not want W3C to use our copyright at all. They are using it now under license, which we think is improper, and they were exceeding the license that they were granted under the original asset transfer agreement. This isn't a money case, so it's selling our records or they're selling books or exceeding our copyright in that sense. We participated in the development of this specification knowing we would have control over our copyright. Certainly, we could wait until anyone- You could say that we wait till the house burns down and we'll see what the damage is, but we want to stop that from happening. The transaction was improperly structured. It did not account for the- The transaction hasn't even gone through. That's only because they breached their agreement with W3C to close the transaction by October 30th of 2017. That was the original plan in the agreement, and it was after they breached that deadline that they gave the specification license agreement. There was a suit in DC about the transaction. What's the status of that? We- Our summary judgment motion was denied, and it's on appeal to the Court of Appeals for the District of Columbia. This is the second time it's been on appeal, right? Yes. The first time was on jurisdictional grounds, and this is on the merits. If that suit were successful, what would happen? What would be the relief? The transaction would be nullified, and they would have to go back to the members. They have to find the members, and they'd have to go back and seek approval again. Counselor, you said this was not a money case. What is it that you really want out of this litigation? We want the transaction put- I mean, ultimately, if you think about both cases, really, we want the transaction brought before the IDPF members again with the alternatives considered. When this transaction was presented, it was presented as a do-or-die for IDPF. We have to go to W3C, or else all is lost, and we don't think that's the case. And certainly, the copyright transfer was one of those issues for us. So, this is kind of like undoing a proxy fight that a company- that one side has lost in a proxy fight and wants a do-over because of various deficiencies. Yes, sir. I think that's correct. If you were to win all of that, what would you end up with better than what you have now? I don't think that in the original transaction, we don't think that the alternatives were fairly considered. And now that we've seen what W3C has done with the specification in the almost four years that it's had it, I think that the members would consider the alternatives that we wanted to present back in 2016, but were prevented. And that alternatives was basically what? We are outside the record, but it's a recapitalization of the- But it's a financial- it's not just amour propre of your- I'm sorry? You know, it's a French word, meaning your own dignity, where you want to- amour propre. I'm sorry, I'm not a French speaker. Okay, that's good enough. That's good enough. Mr. Fiorello, I just- I'm a little embarrassed. I didn't quite understand something you said, and it may be that it's an ignorance point. You said when the sale didn't- the transaction did not go forward in 2017, they- you seem to be suggesting they end- they were end-running things by creating a new license? Absolutely. So how- tell me how that infringed Overdrive's rights. Just explain to me what has happened with that that is problematic from your perspective. Other than- I mean, had this been the proposition in- at the beginning, it doesn't. I'll answer your question very directly. It does not infringe Overdrive's copyright. People say, okay, so- so that doesn't really help you on the ripeness point, I guess is what I'm getting at, right? It does to the extent that the- the claim was arguably ripe. I still think it's ripe, but it was arguably ripe before that. I think the license is a nullity, at least with respect to they could have given this license from the first day, but it was after they could- they realized they could not dissolve and close after the litigation was filed that they did this end run around in November of 2017. All right. I think I've got it. You'll get your full five minutes unless my colleagues have any other questions for you now. I think we'll hear from Mr. Mobius. Thank you. Thank you. Good morning. Good morning. And may it please the court, my name is David Mobius for FLE Open Ebook Forum, Doing Business Ads, the International Digital Publishing Forum. As Mr. Fieldrell discussed, Overdrive's goal ultimately is to block IDPF's efforts to save the EPUB digital publishing specification by combining with the W3C, which is the organization formed by Tim Berners-Lee, who is literally the inventor of the World Wide Web. Hey, can I ask you a question at the outset? Let's say right after this was approved, it's 2017, the deal is about to be consummated, okay? You're weeks away from the initial consummation date. And let's say they bring this exact action, but it's a deck action. And the gist of the deck action is, whoa, whoa, whoa, they're about to distribute some collective works rights that we actually separately own. And we would like the federal courts to resolve who owns what before all these copyright interests are transferred to MIT. Now, if you just stop it there, wouldn't that have been a right dispute with Article 3 standing and everything else? I don't believe so, Your Honor. And there's two reasons. And one, just very briefly, now I want to hit squarely on the rightness, but the relief they're seeking, which is to nullify the transaction under Section 204A of the Copyright Act, is a relief that's even statutorily available. That's a Copyright Act statute of fraud. I'm really glad you answered a question I didn't ask, but now answer the question I asked. I'm asking a hypothetical. They didn't bring a deck action. They didn't do what I just described. I'm trying to understand your theory of rightness. What is your theory of rightness as to the question I asked? Okay, so there would be rightness with respect to whether or not there's present infringement going on at that moment. And there's not, but that's a legitimate dispute. The question is whether there will be infringement that happens after the transaction closes. And that is purely hypothetical. What Overdraft's trying to do is hold. Here's what I don't understand. The point of the deal was to transfer all these rights. And part of what they're saying is some of those rights are not for them to transfer. Why couldn't they get a federal court to say that part of the agreement is not legit, that they're allowed to take that out of the agreement? Whatever it is, IDPF can transfer the rights it has after the right approval, the proxy fight, whatever, but it can't transfer Overdrive's rights. Wouldn't that have been legit? It would not have because as a copyright action, you have to look at what constitutes infringement and transfer itself does not violate any section 106 exclusive rights. So the question is what happens after the transfer closes? The hypothetical here is what will W3C do with these copyrights? Let me ask you this. So you're saying that you couldn't have a DEC action or you it would have to be an infringement allegation? Correct. I don't know whether I own this collective work or not. We're having a dispute about our various contributions and who owns the resulting work and can they license it, whatever. But I'm not saying there's infringement going on right now. I just want to I'm having a controversy about ownership. You can't do that? Certainly not in this circumstance. The ownership issue is the first element of the infringement test. And so copyright is a negative right that is asserted and to try to stop somebody from doing something. The cause of action here is to stop infringement and to seek a remedy where there may be here. Mr. Mobius is another way of putting the answer you just gave to Judge Nalbandian and to me that the way copyright works is to the extent Overdrive had rights that IDPF could not sell, the minute EPUB infringes, you know, five years later, that's when Overdrive sues. Is that the point you're making that that's the only way to do this? Obviously, IDPF couldn't sell what it didn't own. Overdrive retained what it owned and the way it protects itself is you wait for the infringement. Is that your answer? That's exactly right. It's exactly right because the transfer is not the violation if W3C does something with it after the transfer. But I can just tell you what's going through Judge Nalbandian's mind, and I think mine too, is that's just so perilous. I mean, maybe the person wants to avoid, I mean, they don't want to infringe either for ethical or financial reasons, and they like to know upfront who owns what. That's not, there's no way to do that under copyright law. Not that I'm aware of, Your Honor. No, and certainly not in the way that this case was brought. And that's part of what's the problem, I think, that is a struggle in this case is the ends that you're describing are legitimate ends. It's sort of a quiet title situation here, but copyright is the wrong tool for that purpose. It's taking a copyright infringement claim, which is what Overdrive pled. They pled direct and contributory infringement, and they're trying to fashion that into a completely different dispute, this type of dispute to try to achieve an end. And irrespective of what we think about the legitimacy of that end, we're here on a copyright infringement case where they pled direct and contributory. Can I ask you another question, which is just the mystery of why the deal hasn't been consummated? Sure, there is no mystery there, and there's no subterfuge like Overdrive says. First off, with the blizzard of litigation that Overdrive brought, the deal couldn't close. So this second license that they ascribe all these nefarious purposes to, the number one purpose of that document was to extend the closing date for the transaction because of all the contingencies, many of which are of Overdrive's own creation. And so it merely reaffirmed the existing license, the original transaction documents. But how, I don't understand how the litigation prohibits the transaction from proceeding. The federal court litigation is giving you a thumbs up so far. It's saying it's not right, so go forward and we'll deal with right claims later. And I'm not sure I understand why the District of Columbia litigation is stopping consummation. Because IDPF's members, its board members, I'll be frank about this, and this might be slightly out of the record, but they are trying to do the right thing. They're acting in abundance of caution. And at several points in litigation, there were inquiries made regarding whether or not Overdrive would pursue claims for personal liability against IDPF board members if the would not make the commitment that would not sue board members in their personal capacity. So the board exercising their fiduciary duties and personal duties said we are not going to take that personal risk. And so we're going to see how this shakes out because we don't want to be in the crosshairs like that when we're just trying to do the right thing. So it's an abundance of caution, nothing more, nothing less. It's a little funny if that's the case that you're making rightness at all. I realize we have an independent duty, but you would think your self-interest would be sort this out. I disagree because what happens when IDPF dissolves is there's no possible infringement that occurred prior to that because of licenses. And IDPF doesn't exist after it dissolves because it's not doing anything. What Overdrive is trying to do here is hold IDPF presently liable through contributory theories, so vicariously liable for infringement that may or may not occur after IDPF no longer exists. That's the contingency here that destroys rightness. It's rightness with respect to liability that may or may not arise after IDPF no longer exists because for there to be contributory infringement, you must have an underlying act of direct infringement and contributory infringement that is trying to hold a third party vicariously liable for that. So infringement can occur until after the transaction closes. The transaction closes when IDPF dissolves. That's a simultaneous event. And so there's sort of the contingency there. Number one is we don't know if W3C is going to infringe or not after the transaction closes. The specification has already evolved into a new version. MIT could say, listen, there's still too much of a cloud over this here. We're going to drop the specification. They might start over from scratch. We don't know. They might use the specification that OverDrive doesn't claim any rights in, which is an important piece of this that they never could tell us what they actually think that they own. But the point is we don't know what's going to happen. So after IDPF dissolves, there may not be any infringement for OverDrive to try to hold IDPF contributory liable for it today. There may be infringement that happens after the transaction closes. If so, though, IDPF is not contributory liable for that because it did not cause MIT to do anything. It said, here, have the specification. You do with it what you want. And MIT says, thank you. We'll take it. We'll do with it what we want. There's no way for IDPF today to be contributory. That seems a little doubtful that you own something with a clouded title and you cling your hands of any responsibility by saying, it's up to you what you do with it, including whether you infringe someone else's rights. That seems funny to me. I'm struggling a little bit with your idea that there's potential contributory negligence going backwards, but it ends the minute IDPF terminates. That seems funny to me. There's two points on that. One is there's nobody to hold contributory liable once IDPF no longer exists. But the second piece of this that I just want to touch on briefly with the time here is that this is all assuming that OverDrive has protectable copyright interests. And as a collective work, the burden falls on OverDrive to establish that it actually has some interest in EPUB. And because it's a collective work, not only does it have to meet what OverDrive is claiming to meet the normal standards for copyright ability of originality and creativity, but it also has to establish through admissible evidence that it made specific, separate and independent contributions to the EPUB specification that if you took them standing alone would themselves qualify for copyright protection. OverDrive identified three of its employees who it says made contributions. They were deposed extensively on this issue. There was written discovery on this issue where IDPF challenged each one of them to identify by chapter and verse what they actually did contribute to the EPUB specification. And to a person, they could not identify a single thing. At most, they could say they were in the room when discussions were had. Does everybody, does the evidence show who did create all of it? Or is it possible it really was truly collective? I think that there is. Someone said, oh, it's Joe Smith. Joe Smith was the genius here. The rest of them were just riding Joe's coattails. There are people who undisputedly contributed more. There's people who were there that may have contributed, may not have contributed. But we're sort of stuck in this framework of the collective work because that's how OverDrive pled the case and IDPF did not challenge that because it believes it wins under that framework. I would suggest to you that's more properly characterized as a joint work where you had people coming together to create an undivided whole work. But even if we assume that the status of the work is a collective work as OverDrive has pled and therefore judicially admitted, by doing so, they've taken on that burden of having to parcel out each thing that they say they created so the court can then evaluate whether it's sufficient. Can I ask you a mechanical question on this point because you raised it in your brief. The district judge, I think, denied summary judgment, said there's a fact issue on this question, right? Although he said there was no evidence in the record. It seems like a mixed message, I guess, but ultimately he denied summary judgment, right? I believe that technically you're right. The way he took up this issue, I believe, if I'm correct, in the context of analyzing OverDrive's motion for summary judgment and made the finding that there was not, OverDrive didn't come forward with evidence that could show that it has a copyrightable interest. But that finding is also dispositive on IDPF's motion in that they had to still, if the court were to reach the merits of IDPF's motion moving past ripeness, that would also be dispositive in IDPF's favor on its summary judgment motion as an alternative basis for affirmance. One last question, your time's up, but what's your sense of the status of the D.C. litigation? Like, how much longer the second appeal's been briefed? Has it been argued? Yeah, you're right. Honestly, I don't represent IDPF for purpose of that action. My understanding is that the notice of appeal was just filed within the past month or so, but that would be better for Mr. Fiorello. All right. Thank you very much, Mr. Mobius. Mr. Fiorello, you've got your rebuttal time. Thank you. I'll just start by answering your question, Judge Sutton. The notice of appeal has been filed and the briefing schedule has not been set, so we're some distance away from that. Okay. What's fascinating about IDPF's position, it's similar to their position on authorship and on contributions and on everything, is with ripeness. We can't sue now, but we can't sue later either, and there is no, they leave us no alternative, and I think it highlights the fact that- Well, but just to be clear, no surprise, they've got a ripeness argument and a merits argument, so don't, when they say you can't sue later, they're not saying it's moot. They're saying you don't have legitimate rights and IDPF will be gone. So if you have rights on this collective work, you can sue for infringement. But the actual infringement that they say is lacking here will occur at the moment they transfer the spec, whether or not W3C does anything, which is, of course, ridiculous because they're working on the spec now based on the work our copyright is included in. They're saying they might just drop it. They might do this, they might do that. We said, first of all, I want to correct the record. We did move for declaratory judgment. The summary judgment motion was for a declaration that they can't transfer. It's in paragraph B of our prayer, and that's what we move for summary judgment on. So the situation that you were mentioning, Judge Sutton, is exactly what we want to do. We want to sort this before they go down the road. Before now, it's been four years. But what about the point Mr. Mobius made that it's quite unclear how MIT will use this? The point is, the rightness point that was at issue, I guess, before the district court is the transfer of our copyright. IDPF, let's be clear about something in the record. IDPF doesn't own any aspect of EPUB. They're not the collective work owner. They did not contribute to the selection of the material that became the collective work that is EPUB. They didn't get it by assignment, and they don't own it by the work for hire doctrine. That's the only way you can own copyright. They're transferring these things that they don't own. So you and I write a song, Judge Sutton, and Mr. Mobius sells it. He has no right to sell it. That's our point here. That's the essence of our claim. And classically, you would wait till the sale and the actual infringement before you and I protected our rights. First of all, there's no law anywhere that says that you have to have an infringement claim to raise a 204. I've never seen a case like that. Mr. Mobius doesn't cite any of those in his brief. And we did cite cases, particularly the movie cases I thought were very interesting, where they were taking preparatory steps to make a movie based on an infringing work. That was sufficient. They didn't make the work. They didn't start shooting. They just hired the folks, and they got everything ready. If you take the analogy here, that's okay if it's been properly licensed for today. Correct. And they didn't. That's the point. I see what you're saying. You're saying that that would be the infringement. That's the problem you have in the case as far as I'm concerned. I understand. I think the promise to... I understand what you're saying. First of all, the other point that I thought needed a response on Mr. Mobius is you can't sue later. Certainly all corporate law, including I believe DC, would allow a dissolved corporation to be sued after they dissolve. So I don't think there's a point that we couldn't later on, but that doesn't really talk about ripeness. It's just the shell game that they keep talking about. The other thing that's interesting is that the way the specification license agreement is worded, they never have to close. It says that until they make the transfer. First you had a date certain. Now you have this date or until you make the transfer. So it is conceivable that an entity, could be W3C, could be someone else, could keep this corpse of IDPF alive. They haven't paid their corporate franchise taxes down in DC or anything like that, but that's not a big deal. That means you win. No, no. Then they stay forever. Then they stay forever a zombie. I'm sorry. That means we don't win. It means that if the reasoning of the district court applies, this zombie IDPF... If IDPF stays in place, if the transaction never goes forward, how did you not win? We didn't win because we now have another entity actually pretending to be IDPF. That's W3C or the successor without our permission. As long as the existing licenses are allowing them to do that, you won. And if you don't like the existing licenses, get them changed. There are no members and there is no activity at W3C. There'd be no way to change those. There's no practical way to do that or impossible way. Forget practical. There's no possible way to change that. The license was done. I understand Mr. Mobius is... I don't impugn him or his client, but what the net effect of what's happened with this license is to cause this supposed, and I don't think it is, but a supposed ripeness issue that they can then perpetuate eternally. And that prevents us from getting any remedy in this when they were taking these affirmative steps long in the past, definitive steps as early as November of 2016. Huh. I'm not quite grasping that last point. They can perpetuate the existing licenses forever? Yes. There's no obligation. Even Mr. Mobius is saying, yes, they can perpetuate the current license until they dissolve. That could be never. It's a corporate entity. It could live for 100 years. This could never, ever, ever come forward. And that's certainly not what the members approved and certainly wouldn't solve the IP ownership of the... The analogy I use since the last one, I know I'm over. It's like Lenin's tomb. You've got this glass coffin of IDPF, right? And you have to drag it around everywhere you go. Look, it's IDPF. It's still there. It's still there. We can still see it. And that's what the specification license allows them to do. It's too bad you sued. Well, right. That's the other irony here. You're exactly right, Your Honor. That's precisely the oh, it's too late. Oh, you should have sued earlier. You know what I mean? Why doesn't it help you then if Judge Oliver's rightness decision is affirmed? Why doesn't that help you? Because they could sit there for eternity with Lenin's coffin or Lenin's tomb and just keep IDPF forever and we'd never be able to sue. The license would go on forever and ever. Yeah. The zombie IDPF, I call it. All right. Well, I thought I was getting my head around this and you've just blown it up a little bit. So do my colleagues have any other questions? All right. Well, thanks to both of you. I mean, it's really a tricky case. We're grateful for the briefing, which was good. And thank you for answering our questions, which we're always grateful for. So thank you. The case will be submitted.